IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case Number: 2:19-cv-14174-Rosenberg/Maynard

RAYMOND KENDALL SMITH, M.D.,

    Plaintiff,

vs.

FOREST RIVER, INC., and TROPICAL
RV and AUTO EXCHANGE, INC., d/b/a
TROPICAL RV SALES,

    Defendants.

_____/

### Plaintiff's Motion for Reconsideration of DE 78 — Order on Plaintiff's Motion for Sanctions (DE 74) and Motion to Extend Time to File Reply (DE 76)

Plaintiff, Raymond Kendall Smith, M.D. ("Dr. Smith" or "plaintiff") moves for

reconsideration[1] of DE 78 —  the Magistrate Judge's Order on Plaintiff's Motion for

Sanctions (DE 74) and Motion to Extend Time to File Reply (DE 76) (the "Magistrate

Order") entered February 14, 2020, and states as grounds:[2]

### Applicable Standard of Review

"'[T]he purpose of a motion for reconsideration is to correct manifest errors of law

or fact or to present newly discovered evidence.'"  Z.K. Marine Inc. v. M/V Archigetis,

808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d

906, 909 (3d Cir. 1985)); see also ABB Power T&D v. Gothaer Versicherungsbank

---

[1]Plaintiff's previously filed Exceptions [DE 81] is being re-submitted as a motion for reconsideration pursuant to the Court's Order entered February 27, 2020 [DE 89].

[2]The February 14, 2020 Magistrate Order is appended as Attachment 1.



**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL  33301 • 954.462.1983

VVAG, 939 F. Supp. 1568, 1572 (S.D. Fla. 1996).  For example, a motion for reconsideration may be appropriate where "'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'"  Id (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)).

"[T]here are three major grounds which justify reconsideration 1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or prevent manifest injustice."  In Re: Managed Care Litigation, 2002 U.S. Dist. LEXIS 11809, (S.D. Fla. 2002); see also Ramos v. Boehringer Manheim Corp., 896 F. Supp. 1213, 1214 (S.D. Fla. 1994).

Plaintiff seeks reconsideration on the second and third grounds of the Magistrate Order, which ordered Forest River to provide additional production of documents responsive to one of plaintiff's discovery requests and otherwise denied his request for sanctions, as well as his motion for extension of time to submit a reply to Forest River's response to his motion for sanctions with additional evidence based on depositions taken to rebut Forest River's response to the sanctions motion.

### Introduction and procedural history

Nature of the action — Dr. Smith sued Forest River, Inc., under the Magnuson-Moss Warranty Act for breach of written warranty (Count I) and breach of the implied warranty of merchantability (Count II), and for common law fraud (Count VII).  He alleged that Forest River built and its authorized dealer, defendant Tropical RV and Auto Exchange, Inc., sold to Dr. Smith, a "fifth wheel" travel trailer that suffered from a wide range of defects in materials and workmanship that manifested themselves soon after he took possession of it and began to use it. The focus of Dr. Smith's grievance

against Forest River concerns product defects and misrepresentations, which are
relevant to his claims of breach of warranty and fraud against Forest River.

The discovery request and 12/11/19 order — On December 11, 2019, the
Magistrate Judge entered an order [DE 58] (the "12/11/19 Order"), which granted
plaintiff's motion to compel and denied Forest River's motion for protective order
concerning two discovery requests for which Forest River produced no responsive
documents and instead objected asserting relevance, overbroad and burdensome
objections, including Request No. 7:[3]

> 7.  Complaints received by defendant from any person or entity about towable
> recreational vehicles commonly known as "fifth wheels" travel trailers, including
> but not limited to those of the same model as the camper, from January 1, 2017
> to the date of your response.

Forest River was ordered to produce the records within 14 days (or by December 26) [DE
58, at 6].  After plaintiff agreed to extend the deadline to January 2, 2020, but not further
[DE 74, at 3], Forest River moved to extend the deadline to January 10 [DE 60], on the
ground that "[a] search of Forest River's database resulted in approximately 4,925
potentially responsive documents, with each document including multiple pages." [DE 60-
1, ¶ 3 (Affidavit of Manuel Herceg, Co-National Warranty Counsel for Forest River)].[4] Forest
River represented that it needed until January 10 to produce "any responsive documents
to request number 7," which it would produce on "a rolling basis as documents are
reviewed." [Id. at ¶ 5] On January 3, the Court granted the motion and ordered production
by January 10, if the parties could reschedule a deposition noticed by Dr. Smith for January
8, or by noon January 6, if the deposition could not be rescheduled. [DE 61]

---

[3]The 12/11/19 Order is appended as Attachment 2, and Plaintiff's first request for
production is appended as Attachment 3.

[4]DE 60, the motion and affidavit, are appended as Attachment 4.

The parties rescheduled the deposition and Dr. Smith received Forest River, Inc.'s Amended Response to Plaintiff Request for Production No. 7 on January 7. [DE 74, at 4] The amended response,[5] was accompanied by 767 pages (Bates numbered FR000423-001189).  Forest River attorney, in response to a question about whether the 767 pages were the first installment of the "rolling production" promised, represented that "[t]he documents provided . . . include **_all_** of the responsive documents." See 01/08/20 Lueckert E-mail, appended as Attachment 6 [DE 74-6].

As noted in plaintiff's Sanctions Motion [DE 74, at 4-5], the records produced revealed complaints by approximately 43 identifiable individuals (or couples) and four unidentifiable complainants. They included one draft lawsuit asserting state law breach of express and implied warranty and breach of contract claims, two complaints from state attorney generals and one from what appeared to be a Forest River ethics hotline. 29 of the complaints appeared to be "direct" complaints—letters and emails to Forest River from owners. Three were from dealers, three more from a combination of the owner and a dealer, two from a repair center, two from lawyers representing owners and eight were unidentifiable as to their source or were stray items that did not appear associated with any individual's complaints or appeared unresponsive or irrelevant.

The Sanctions Motion — On January  28, 2020, plaintiff moved for sanctions pursuant to Federal Rules of Civil Procedure 37 and 26(g), 28 U.S.C. § 1927, and the Court's inherent powers against Forest River for failing to comply with the 12/11/19 Order and for making material misrepresentations to the Court leading up to the entry of that order and for concealing a large number of responsive documents. [DE 74] The motion alleged that, after becoming concerned about the small number of documents

---

[5]The Amended Response is appended as Attachment 5.

turned over after a delay necessitated by what was alleged to have been voluminous records in Forest River's possession, Dr. Smith undertook his own internet search for Forest River complaints and discovered substantially more complaints from individuals and entities that Forest River had received but had not turned over to plaintiff, including from the following sources:

**One,** Better Business Bureau (BBB) Complaints [DE 74, at 5-6] — Plaintiff's search of the BBB's online database revealed 137 complaints filed against Forest River, at least 35 of which are fifth wheel-type campers,[6] and to which Forest River specifically responded.  See Attachment 7 (DE 74-7, Exh. G, BBB record of Forest River complaints, with those concerning fifth wheel trailers highlighted).  To the best Dr. Smith could determine by cross referencing the dates and type of complaint with those produced,[7] none of these complaints were turned over, despite the fact that each time an individual files a complaint against a business, the BBB forwards it to the business within two business days, and the business is asked to respond.[8] Notably, each of these withheld complaints involve either "guarantee/warranty issues," "problems with product/service," or "advertising/sales issues."

[6]The number could be higher because not all of the entries included the make and model of the Forest River RV that was the subject of the complaint.

[7]The BBB does not list names.

[8]See *How BBB Complaints Are Handled: Better Business Bureau ®,* https://www.bbb.org/process-of-complaints-and-reviews/complaints (last visited January 17, 2020).

**Two,** National Highway Transportation Safety Administration ("NHTSA")[9]

records [DE 74, at 6-7]— Dr. Smith searched NHTSA's database for the top 47 Forest

River product lines recalled by NHTSA.  For lines from 2017 through 2019 that include

fifth wheel trailers, the NHTSA published information on 111 recalls, for which there

were 30 manufacturer communications, and 33 complaints.  See Attachment 8 (DE 74-

8, Exhibit H, list of NHTSA recalls, investigations, complaints and manufacturer

communications  from January 1, 2017 to date).  None of those were produced.  For at

least one of these recall series, the 2018 Forest River XLR, there were 370,758 vehicles

implicated.  The nature of these recalls differ, but include lack of propane or carbon

monoxide detector, malfunctioning awning, malfunctioning power tongue jack, side deck

patio concerns, and a generator's exhaust that may melt the plastic underbelly.

**Three,** other pending lawsuits [DE 74, at 7-9] — A search on Justicia

revealed 66 "contract" lawsuits against Forest River, 42 of which are listed as

Magnuson-Moss Warranty Act ("MMWA") cases, see Attachment 9 (DE 74-9, Exhibit I,

listing of the Justicia cases).  (Due to time constraints, Dr. Smith was unable to review

the pleadings to determine how many of the cases involved fifth wheel trailers or to

cross reference the names with those listed in the documents Forest River produced).

Dr. Smith also searched PACER for federal cases with  Forest River as a named party,

and turned up 76 civil cases.[10] See Attachment 10 (DE 74-11, Exhibit J, PACER search

result for 01/01/17 - 12/31/19).  However, neither Justicia nor the PACER reported all

---

[9]The NHTSA enforces Federal Motor Vehicle Safety Standards, and on its website, publishes information regarding vehicle recalls, investigations, complaints, and manufacturer communications.

[10]The appeal by Forest River (Line 13) and the bankruptcy case (Line 18) are not counted in the total.

lawsuits filed against Forest River, since they did not reveal <u>Sparks v. Forest River</u>,

Case Number 4:19-cv-00110-P, a putative class action involving a fifth wheel trailer,

information about which was accessible only by logging into the ECF portal for the

Northern District of Texas.  <u>See</u> Attachment 11 (DE 74-10, Exhibit K, second amended

complaint[11] filed December 20, 2019). Although the Justicia report at page five and the

PACER Report at line 10 list a case filed by "Sparks" on September 9, 2019, that

Sparks case has four defendants, not one, and was filed in the Northern District of

Indiana, not Texas. The Sanctions Motion noted that difficulty as a reason Forest

River's contention that plaintiff could obtain information about the lawsuits as easily as it

could by searching its records, as opposed to plaintiff's search of PACER (with 94

district courts and four U.S. territories) and more than **100 million** state trial court cases

filed in each of the last three years[12] —assuming all courts have electronically kept and

searchable records that are publicly accessible via the internet.

  ***Four***, <u>complaint boards, customer service complaints and dealer complaints</u> [DE

74, at 9-10] — Consumer complaint web sites reflect undisclosed "complaints" about

Forest River's products. For example, reviews of Forest River products appear on

<u>www.pissedconsumer.com,</u> which  shows 1473 reviews and complaints as of December

11, 2019. <u>See</u> Attachment 12 (DE 74-12, Composite Exh. L, a sampling of complaints

about fifth wheels that also reflect communications with Forest River about its products).

  Forest River website also revealed additional sources of the requested

complaints.  It includes a "Contact Us" page for customer service issues, DE 74-13

---

  [11]The court summarily denied a motion to dismiss directed to this pleading by order
dated January 16, 2020 [DE 25].

  [12]https://iaals.du.edu/sites/default/files/documents/publications/ judge_faq.pdf, at p.
3 (last visited January 27, 2020).

(Exhibit M, appended as Attachment 13), and lists 39 different models of fifth wheel

trailers its website, DE 74-14 (Exhibit N, appended as Attachment 14). Using the

"Dealer Locator" feature on the website, see DE 74-15 (Exhibit O, appended as

Attachment 15), plaintiff's counsel was able to find 35 fifth wheel trailers for sale at 22

dealerships located from Key Largo on the south to Winter Garden on the north to Fort

Myers to the West using her office zip code, 33301. Searching an Orlando zip code,

32814, an additional ten Florida Forest River dealerships that sold one or more fifth

wheels were discovered. Finally, using a Tallahassee zip code, 32311, an additional 11

dealerships were identified. This totals 43 Florida dealerships. There are 50 states and

4 U.S. territories.

Forest River's 02/03/20 Response — Forest River responded to the Sanctions

Motion [DE 75] ("Sanctions Response"],[13] arguing that plaintiff did not confer enough

before moving for sanctions, supported by an affidavit of its counsel representing that

Forest River did not have a central database of consumer complaints, BBB complaints,

or lawsuits that  it could have accessed to respond to Plaintiff's discovery requests.  [DE

75-1, ¶¶ 10 - 13]

The 02/04/20 Rule 30(b)(6) deposition.  Plaintiff took the deposition of Forest

River's Rule 30(b)6) designees, Michael Coy (Corporate Manager for Customer

Service, McCoy Depo. 4:20-25), and Bruce Hill (IT Director, Hill Depo. 4:15-18]

February 4,[14] which revealed:

---

[13]It also argued that the motion should not have exceeded five pages (although the motion was for sanctions and not solely a discovery motion).

[14]Excerpts from the depositions transcripts are appended as Attachment 16 (McCoy Depo.) and 17 (Hill Depo.).

(1) that Mr. McCoy personally received in his Forest River e-mail inbox complaints from the BBB about Forest River's products that he farms out to the appropriate division [McCoy Depo. 14:19-11, 47:14 - 48:1], and uses a spreadsheet (with customer name and VIN number) kept by his office to track the complaints, none of which were produced in this case [McCoy Depo. 10:24 - 11-13, 14:19-22, 16:14 - 17:6; and 47:16 - 48:5];

(2) that Forest River's owner records could be located by searching for VIN numbers and certain digits in the VIN number identified fifth-wheel trailers it manufactured [McCoy Depo. 31:25 - 32:2, 32:18 - 33:17];

(3) that Forest River's IT department had the ability to extract the VIN numbers from its owner database and "dump" this and other data into another application where the data could be more easily filtered and searched [Hill Depo. 30:15 - 31:10, 44:25 - 46:1, 23:17 - 24:16; McCoy Depo. 23:17 - 24], but such a search was not conducted [Hill Depo. 46:6-17];

(4) that Forest River complies with the NHTSA regulations [McCoy Depo. 72:6-12], is required to report complaints to the NHTSA [McCoy Depo. 41:3-16, 43:24 - 44:11, 73:18 - 74:3], and has a compliance officer who has information about such complaints. [McCoy Depo. 41:11-23]   Those complaints were not produced. [McCoy Depo. 49:6-20]; and

(5) that, although Forest River did not maintain all of its records in electronic format [Hill Depo. 9:22 -24], Forest River's entire search effort was limited to searching an e-mail archive for e-mails that contained the words "complaint" and "fifth wheel" (or some variation of "fifth wheel" such as "fifth-wheel") during the relevant time

period [McCoy Depo. 66:12-25, 68:9-12; Hill Depo. 28:10-12],[15] and did not include a

review of the spreadsheet that kept to track of the BBB complaints [Id. 67:1-5, 68:9-23].

       <u>Plaintiff's motion for extension of time for the sanctions reply</u>.  Plaintiff moved

February 10 for an eight-day extension of deadline to reply to the response to the

sanctions motion, which would have allowed for sufficient time for his counsel to obtain

and provide portions of the deposition transcripts needed to rebut, among other things,

Forest River's representation that it did not have a central database of consumer

complaints, BBB complaints or lawsuit that it could have accessed access to respond to

Plaintiff's discovery requests. [DE 76, appended as Attachment 18] The information

provided with the reply would have included the deposition testimony referenced above

about the limited nature of the search conducted by Forest River — limited only to e-

mails — and did not cover other sources of information available even after defendant

was ordered by the Court to provide the discovery December 11, such as:

       ***One***, the BBB complaints that defendant's Rule 30(b)(6) representative McCoy

testified were tracked on the spreadsheet that his office maintained, about which Forest

River had the ability to determine the name of the complainant and model type without

individually reviewing each complaint to determine the model involved, contrary to what

was represented in the Affidavit of Kelli Lueckert [DE 75-1, ¶ 11, appended as

Attachment 19];

       ***Two***, the complaints related to Forest River's compliance with the NHTSA

regulations and the CFR about which McCoy testified Forest River's compliance officer

should have knowledge, contrary to what was represented in the Affidavit of Kelli

Lueckert that documents received by the NHTSA were not considered "complaints."

---

[15]It also did not include a search for the word "lawsuit." [Hill Depo. 40:24 - 41: 8]

[DE 75-1, ¶ 12] Plaintiff's research after the deposition indicated that search of the NHTSA compliance information should have involved other sources of available information known to Forest River, as evidenced by:

- The pleadings in the NHTSA litigation In Re: AQ14-002, Forest River, Inc., et al, including a July 8, 2015 consent order (appended as Attachment 20)[16] concerning violations of the Safety Act, 49 U.S.C. § 30101, *et seq.,* that Forest River admitted (including failure to report "consumer complaints" and warranty claims quarterly (¶¶ 3, 17)); and about which Forest River agreed to implement a system with an  in-house consultant, written procedures, and training to cure reporting deficiencies (¶¶ 27, 32, 17); and agreed to encourage its suppliers to notify it of potential defects in products and equipment sold to Forest River, including of "warranty claims and other customer complaints" (¶ 42).  Because the same law firm (Taft Stettinius & Hollister, LLP) that signed off on the consent order (page 25), also provided the affidavit for this case [DE 60-1] in support of the second motion for extension Forest River filed for more time to comply with the 12/11/19 Discovery Order, Forest River should have been aware of the need to search for responsive document beyond an e-mail database.  Further, before entry of that Consent Order, Forest River's Chief Corporate Engineer indicated, under penalty of perjury, in its Response to the NHTSA's Special Order October 31, 2014 (appended as Attachment 21), that while Forest River's software had failed to capture and report information about customer complaints or warranty

---

[16]The Consent Order, which covered a three-year period, ¶ 74, also required Forest River to retain an independent monitor to conduct five audits in six-month intervals after retention of the monitor, until at least January 8, 2018, within the period covered by plaintiff's Request No. 7, ¶¶ 51-54.

claims, Forest River was implementing a plan to comply with its reporting

requirements, including using its risk management department to do the reporting

until a new department was developed to do so [id. 6-7]; and would review all of

its data concerning, among other thing things, consumer complaints and

warranty claims to generate the required reports.  [id. 8]

- The NHTSA reporting requirements, forms for which plaintiff found online after

  the deposition, included submission of data about trailer, including a spreadsheet

  indicating the information to be reported, available at,

  https://www.nhtsa.gov/vehicle-manufacturers/early-warning-reporting-ewr, with

  tabs for reporting information about "Consumer" complaints (i.e., Make, Model,

  Model Year, Suspension-02, ServiceBrake-03, ServiceBrakeAir-04,

  ParkingBrake-05, Electrical-11, ExtLighting-12, Structure-16, Latch-17,

  TireRelated-19, Wheels-20, TrailerHitch-21 and FireRelated-23).  See

  Screenshot of the "Trailer" Excel Tabs, appended as Attachment 22.

- Forest River's Dealer Central Software for processing warranty claims, available

  online at https://dealers.forestriverinc.com/Download/ClaimEntryHelp.pdf,

  indicates that Forest River has a system, accessible online, for dealers to enter

  information about warranty complaints, which provides instructions about

  "complaints" and for entering a different "complaint" for each warranty item, as

  well VIN and description of the problem.  See ClaimsEntryHelp instructions, at 1,

  5, appended as Attachment 23.  Plaintiff discovered that information by

  conducting an online search after the corporate representatives' depositions.

**The February 14, 2020 Order and Reasons for Reconsideration**

Plaintiff acknowledges that the February 14 Order provided some relief in the form of ordering some additional searches to be conducted by Forest River. However, the relief provided was done based solely on what Forest River represented in its Response regarding its search and available information without the benefit of plaintiff's reply, which would have included deposition testimony of Forest River's representatives and other evidence plaintiff obtained after the depositions that he sought to bring to the Court's attention with his reply, to demonstrate that even after Fores River was ordered to produce responsive documents by the first discovery order, Forest River failed to produce information that was not only responsive to the request, but it knew about and to which it had access, contrary to what it represented to the Court. Plaintiff should have been provided with the opportunity to reply with the benefit of the deposition testimony and the other evidence he sought to provide, and the evidentiary hearing he requested held to determine, if, as plaintiff contended in the Sanctions Motions, sanctions should have been awarded because Forest River made material representations to the Court leading up to the entry of the 12/11/19 Discovery Order, concealed a large number of responsive documents, and unduly multiplied the proceedings. After entry of the February 14, 2020 Order, Forest River produced to plaintiff additional records, including pdf copies of BBB complaints, and NHTSA documents (including correspondence and Excel spreadsheets).

Thus, plaintiff seeks reconsideration of the following portions of the Magistrate Judge's Order, which he believes to be erroneous and/or should have considered the additional evidence that plaintiff sought to bring to the Court's attention with his reply:

***One***, the denial of plaintiff's motion for an eight-day extension of time to submit

the reply to Forest River's sanctions response, which would have provided sufficient

time for plaintiff to obtain the deposition transcripts that would have rebutted

representations and/or facts made or presented by Forest River on which the Magistrate

Judge relied. The purpose of Plaintiff's Reply was not just to "give him the chance to

counter the Defendant's assertion that he did not satisfy the conferral requirement," as

the Magistrate Judge's Order notes on page 6, ¶ 14.  Plaintiff's motion for extension

also noted plaintiff's desire to provide the deposition testimony and other evidence to

refute representations made in Forest River's response, e.g.,

> 2. Defendant filed its response February 3, 2020, claiming, among
> other things, that, ***One***, plaintiff did not properly meet and confer and, ***Two***, that
> Forest River does not have a central database of consumer complaints, Better
> Business Bureau complaints, or lawsuits, which it could have accessed to
> respond to Plaintiff's discovery requests. Plaintiff wishes to present the Court with
> information that contradicts these assertions in a reply.

> 3. ... Plaintiff seeks an eight-day extension to file his reply because much of the
> evidence that contradicts Forest River's assertions in its response came to light
> during the February 4, 2020 Forest River corporate representative depositions.
> Plaintiff wishes to excerpt portions of the deposition transcripts for the Court's
> review.    Plaintiff's counsel would then review the transcripts and prepare the
> reply brief over President's Day weekend, and file it Tuesday, February 18, 2020.

[DE 76, at 2-3, ¶¶ 2 and 3 (footnotes omitted)] While plaintiff acknowledges the Court's

discretion to manage its calendar, the denial of the motion deprived plaintiff of the

opportunity to bring to the Court's attention evidence, including testimony from Forest

River's own representatives, that would have refuted the representations on which the

Magistrate Judge relied concerning available sources of information and the sufficiency

of the search conducted by Forest River.

***Two,*** the finding that the Forest River's production — which the deposition

testimony indicated was limited to search of e-mails was reasonable — because there

was evidence, as indicated by the deposition testimony (and other evidence plaintiff

found in his search triggered by the depositions), that there were other available

information/database that Forest River knew or should have known was available and

should have searched, but did not.  The sources included information such as the BBB

complaints that Mr. McCoy received and tracked, and the complaints and compliance

information referenced in the NHTSA consent order litigation in which the Forest River's

warranty counsel's firm who provided the affidavit filed in this Court, DE 60-1, should

have known existed; and,

  *Three*, the finding that the level of Forest River's omissions in responding to the

previous discovery order do not warrant sanctions. The deposition transcript and

testimony shows the minimal effort made to search and produce responsive documents,

even after Forest River was ordered to produce responsive documents pursuant to the

12/11/19 discovery order. Plaintiff had to obtain a second order to compel production of

additional evidence, and, based on the deposition testimony and plaintiff's subsequent

search referenced in this motion, plaintiff believes that additional responsive records

exist.  As plaintiff incurred the fees and expenses of two motions to obtain production of

records to the same discovery request, he believes the denial of any sanctions was

erroneous. As argued in the Sanctions Motion, sanctions should have been awarded on

one of the grounds referenced in the motion. *First*, as to the failure to comply with the

12/11/19 discovery order requiring production of all responsive documents, Federal

Rule of Civil Procedure 37(b)(2), provides, in pertinent part, that:

> (A) If a party . . . fails to obey an order to provide or permit discovery . .
> . the court in which the action is pending may issue further just orders.
> They may include the following:

(I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

\* \* \*

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

\* \* \*

(c) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Under Rule 37, "a default judgment sanction requires a willful or bad faith failure to obey a discovery order." Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993), citing Societe Internationale pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 212, 78 (1958). Failure to comply with discovery orders that clearly encompass material that is willfully withheld may support the sanction of dismissal under Rule 37. See Malautea, 987 F.2d at 1543. A default sanction may be properly be imposed even when not preceded by the imposition of lesser sanctions, if lesser sanctions would be ineffective. Id. Finally, "[d]iscovery orders must be obeyed even by those foreseeing ultimate success in the district court." United States v. $239,500 in U.S. Currency, 764 F.2d 771, 773 (11th Cir. 1985).

**Second**, Rule 26(g), which was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." FED.R.CIV.P. 26(g) advisory committee's note

(1983 Amendment), makes the imposition of "an appropriate sanction" **mandatory** if a discovery response or objection is interposed for an improper purpose.[17]

***Third,*** courts also have the inherent authority to sanction parties who have willfully disobeyed a court order. See Chambers v. NASCO, 501 U.S. 32, 45-46 (1991).   The court's inherent power is "governed not by rule or statute but by the control necessarily invested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. at 43 (citation omitted).  This authority must be exercised with restraint and discretion and be used to fashion an appropriate sanction for conduct which abuses the judicial process. Id. at 44-45. Such sanctions may include the dismissal of a lawsuit or an assessment of attorney's fees. Id. at 45. "The key to unlocking a court's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (S.D. Fla. 2006).   A court may find bad faith when a party has hampered the enforcement of a court order. Id. at 1214.

Finally, section 1927 provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1988). The statute allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." Avirgan v. Hull, 932 F.2d 1572, 1582 (11th

---

[17]Federal Rule of Civil Procedure 26(g)(1), provides, in pertinent part that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery . . . response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. **By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry**" (emphasis added).  Further, sanctions are available against the signer, the party, or both, who violates the rule with respect to a discovery response, or objection,

Cir. 1991). Imposition of § 1927 sanctions in the form of awarding attorneys fees personally against attorneys is appropriate where resistance to discovery multiplies the proceedings unreasonably and vexatiously, which occurs when orders compelling discovery are required for the production of information that should have been produced without any judicial prompting. Malautea, 987 F.2d at 1545.

In Malautea, at 1538, the Eleventh Circuit upheld the imposition of sanctions under Rule 37 in the form of striking defendants' answer and entering a default for deliberately withholding discoverable information the district court had ordered produced. It approved an award of plaintiff's attorneys' fees and costs jointly and severally against the attorneys and their clients because it found the defendant's discovery responses and objections were interposed for the improper purposes of "caus[ing] unnecessary delay, [increasing] the cost of litigation for the Plaintiff, and [causing] the time for discovery to end before the Plaintiff had obtained the discovery material that she needed to litigate this case," in violation of Rule 26(g) and 28 U.S.C. § 1927. Finally, the appellate court endorsed fines of $5,000 against each defendant and $500 against each defense attorney under the court's inherent powers.

Here, Dr. Smith served his discovery request on August 30, 2019. Forest River did not produce any documents until January 7, 2020—over four months later and twenty days from the end of the discovery period—and only after being ordered to do so over its unmeritorious objections. Then additional production had to be ordered a month later by another order, i.e., the February 14, 2020 Order, close to the February 26 pretrial motion deadline. So, Forest River has effectively been able to "run the clock" on the summary judgment deadline and deprive Dr. Smith of the evidence he needs to litigate his claims. As argued in the sanctions motion, that was sanctionable conduct that the Court should not

have condoned, and should be corrected by an order granting reconsideration to address the manifest injustice to plaintiff.

WHEREFORE, plaintiff prays that the Court reconsider the February Order on the grounds discussed above, and grant the additional relief sought in plaintiff's motion, including holding an evidentiary hearing, and then granting the appropriate sanctions, including fines, and awarding attorneys' fees and costs under Rule 37(b)(2)(c), Rule 26(g) and/or 28 U.S.C. § 1927 for all time and costs in obtaining and enforcing discovery of Item 7, as well as additional relief as the Court deems warranted under its inherent powers.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by ECF this day to John J. Glenn, Esq., Jglenn@asglaw.com, Kelli E. Lueckert, Esquire, lueckert@asglaw.com, AndersonGlenn LLP, and 2650 N. Military Trail, Suite 430, Boca Raton, FL 33431; John P. Keller, Esq., jkeller.pleadings@qpwlaw.com, and Quintairos, Prieto, Wood & Boyer, P.A., Dadeland Office Pk., 4th FL, 9300 S. Dadeland Blvd., Miami, FL 33156.

Respectfully submitted,

AMLONG & AMLONG, P.A.
500 N.E. Fourth St., Second Floor
Fort Lauderdale, FL 33301
(954) 462-1983

*/s/ Jennifer Daley 856436 for*
*Karen Coolman Amlong*
KAREN COOLMAN AMLONG
kamlong@theamlongfirm.com
Florida Bar Number 275565
ISHA KOCHHAR
ikochhar@theamlongfirm.com
Florida Bar Number 105294

\\amlong3\cpshare\CPWin\HISTORY\200115_0001\16DE.18E