UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14174-CIV-ROSENBERG/MAYNARD

**RAYMOND KENDALL SMITH, M.D.,**

    **Plaintiff,**

v.

**FOREST RIVER, INC., AND
TROPICAL RV AND AUTO EXCHANGE, INC.,**
d/b/a Tropical RV Sales,

    **Defendants.**
_____/

## ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION (DE 91)

**THIS CAUSE** comes before this Court upon the above Motions. Having reviewed the Motion, the Response (DE 93) from Defendant Forest River, Inc., and the Reply (DE 95), this Court finds as follows:

### BACKGROUND

1. This lawsuit concerns a "fifth wheel" type of travel trailer that Defendant Forest River, Inc., built and its authorized dealer, Defendant Tropical RV, sold to the Plaintiff. The Plaintiff alleges that the fifth wheel trailer that he had bought suffered from a wide range of defects that manifested themselves soon after he took possession of it and began to use it. The Plaintiff is suing both the manufacturer and the dealership. The focus of his grievance against the manufacturer concerns product defects and misrepresentations. The Plaintiff expresses that grievance through several different causes of action. Relevant to this discovery dispute is the fraud claim.

2. On August 30, 2019 the Plaintiff sent a set of Requests for Production to Defendant Forest River. At issue here is Request No. 7 where the Plaintiff asked for:

> complaints received by defendant from any person or entity about towable recreational vehicles commonly known as "fifth wheel" travel trailers, including but not limited to those of the same model as the camper, from January 1, 2017 to the date of your response.

In a prior motion the Plaintiff explained that this requested information relates to his fraud claim: "that Forest River caused or permitted advertisements displaced [sic] to the public knowing and intending that the representations would induce consumers to purchase its products." In other words the Plaintiff wants to know if the Defendant's "alleged fraudulent representations induced other consumers to purchase fifth wheel campers who then also complained of defects", as he explained in that motion.

3. In the Order dated December 11, 2019 and docketed at DE 58, this Court ordered Defendant Forest River to produce information responsive to Request No. 7. This Court gave the Defendant until December 26, 2019 to do so. That deadline was extended to January 10, 2020. (DE 61). On January 7, 2020 the Defendant answered the request with its final production of documents. That was a little over four months after the Plaintiff initially asked for the information.

4. Thereafter, at DE 74, the Plaintiff moved to sanction the Defendant for failing to produce a range of additional information, information that the Plaintiff had found on his own from a variety of sources. He found 35 complaints about the Defendant's fifth wheel campers in a database maintained by the Better Business Bureau. He found information regarding 111 recalls (including 33 complaints) on file with the National Highway Transportation Safety Administration ("NHTSA"). The Plaintiff found a particular website where consumer complaints about the Defendant's products are posted. Lastly the Plaintiff counted at least 43 Forest River dealerships

in Florida alone (with presumably many more nationwide). Those dealerships were potentially an additional source of customer complaints, the Plaintiff speculated.

5. In its Response (DE 75) to the Plaintiff's Motion for Sanctions, the Defendant explained how it conducted its search for responsive documents. The Defendant's attorney provided that explanation in her Affidavit attached to that Motion at DE 75—1. There, the attorney explained that "[a] search of Forest River's email and communications database" was undertaken, and of the records that that search had yielded, those that were responsive to the discovery request were produced. The attorney denied the availability of any other databases, i.e., sources of responsive information, that were searchable. The Defendant denied the existence of any sort of database of court claims or any other sort of central database or centralized compliance procedure system of which it could conduct a search of consumer complaints related to fifth wheel trailers. Regarding BBB complaints, the Defendant said that it does have a log of them. As it received consumer complaints from the BBB, it logs them in by customer name and VIN. Because they are not logged in by model, that search yielded no complaints responsive to the request, however. "In order to determine which BBB consumer complaint is responsive to Plaintiff's request," the attorney explained in her Affidavit, "each Complaint received during the relevant time frame would need to be individually reviewed to determine which model is addressed to determine if it is responsive." Regarding NHTSA records, the attorney explained in her Affidavit that they are not considered consumer complaints but rather "address various recalls or issues which [its] Office of Corporate Compliance generally addresses." Regarding information that its dealerships might have, the Defendant explained that just because it has a customer service department, dealerships, and processes requests for warranty work does not mean that it failed to produce responsive documents.

6. In its Response (DE 75) the Defendant described the Plaintiff's accusation that it was hiding documents as unsubstantiated and ungrounded. In its Response (DE 75) and Affidavit (DE 75—1) the Defendant also complained about the Plaintiff's failure to confer with it about the sufficiency of its document production. Had the Plaintiff conferred with it, then "the majority if not all of the issues could have been resolved", the Defendant asserted. The Defendant nevertheless offered to conduct additional searches for responsive information.

7. This Court addressed the dispute over the sufficiency of the Defendant's document production in its Order at DE 78. At Paragraph 10 thereof, this Court agreed with the Plaintiff that there were shortcomings with the Defendant's production:

> The Plaintiff raises a legitimate concern about consumer complaints that the Better Business Bureau has on file. Based on both parties' representations, there appears to be the potential that it shows consumer complaints regarding fifth wheel travel trailers made since January 1, 2017 which the BBB forwarded to the Defendant. The Defendant shall supplement its production to include any responsive information. The Defendant likewise shall supplement its production to the extent it received NHTSA recall notices or other notices of consumer, regulatory, or consumer safety watchdog matters that NHTSA sent it and that fall within the other parameters of Request No. 7 in terms of fifth wheel travel trailer product line and time frame.

However this Court declined to award sanctions. At Paragraph 12 this Court found that "[e]ven if the Defendant did omit some consumer complaints of which it should have known, the extent of that omission does not warrant sanctions."

8. Instead, "[t]o the extent there may be additional responsive information outstanding," this Court found that that shortcoming "could be corrected through a supplemental production." Consequently this Court granted the Plaintiff's Motion for Sanctions "only to the extent that this Court orders Defendant Forest River to make a supplemental production of documents and other information that is responsive to Request No. 7 which the Plaintiff's

independent research (or the Defendant on its own) has uncovered." For purposes of making that supplemental production, this Court agreed with the Defendant that Request No. 7's use of the term "complaints" means those made by consumers, dealers, or entities that protect consumers (as opposed to a complaints in the sense of a legal pleading that commences a civil lawsuit) that the Defendant has received from those complaining parties about the quality of the product.

9. Thirdly this Court denied the Plaintiff's request for additional time to file deposition transcripts and other evidence into the record that related to his Motion for Sanctions. "[T]here was no time left anyway", this Court explained, observing how the case already was "nearing the dispositive motions deadline of February 26, 2020" and how "[t]hat quickly approaching deadline heightened the need to bring all discovery matters to a close as promptly as possible." This Court rendered that Order (DE 78) on the Plaintiff's Motion for Sanctions on February 14, 2020, just eight business days before the dispositive motions deadline.

10. In ruling on the Plaintiff's Motion for Sanctions, this Court made no express ruling on the reasonableness of the Defendant's failure to produce the otherwise responsive information that the Plaintiff had found on his own. Instead the ruling concerned itself with finding the most practical solution to the Defendant's deficient production, and under the overall circumstances this Court found a supplemental production to be the most practical course of action. In other words this Court did not focus on the <u>reason</u> for that shortcoming. Implicit in that ruling, nevertheless, was the assumption that there was no <u>egregious</u> reason for that shortcoming that would warrant sanctions.

## NEWLY PROFFERED INFORMATION

11. Through his Motion for Reconsideration, the Plaintiff proffers for this Court's consideration (1) the transcript of the deposition of Michael Coy, who serves as the Defendant's Corporate Manager for Customer Service and who was deposed as the Defendant's Rule 30(b)(6) representative and (2) the transcript of the deposition of Bruce Hill, the Defendant's IT Director. (The Plaintiff proffers the relevant excerpts from those two deposition transcripts at DE 91—16 and DE 91—17). Those two deponents provided information about how the Defendant keeps track of BBB complaints and NHTSA records. Their deposition answers suggest that those sources of information were more readily available and easier to search than what the Defendant explained in its Response (DE 75) to the Plaintiff's Motion for Sanctions. In a spreadsheet log Mr. Coy's office keeps track of consumer complaints that the BBB, private attorneys, and attorneys general forward to the Defendant. The Defendant has a separate warranty department that not only processes customers' warranty claims but also handles any other customer complaints that the Defendant receives. A third department, the Defendant's Office of Corporate Compliance, ensures compliance with NHTSA's reporting requirements. Part of the Defendant's NHTSA obligations entails compiling consumer complaints. Despite those additional sources of information, the only database of information that the Defendant searched was its email database. Citing attorney-client privilege, the Defendant prevented either deponent from explaining why they conducted the search that they did or to say under what instructions they acted.

12. Not only did those additional sources of information exist, but they were searchable. To do so, however, would have required the additional step of transferring the data to another program. Another factor that would have facilitated searching these additional sources of information would have been to search by VIN's. VIN's are a key component of those databases.

Each VIN that the Defendant assigns contains digits that reveal each product model. By using that sub-part of the VIN, a search can be focused on those models relevant to this litigation.

13. Through his Motion for Reconsideration, the Plaintiff proffers for this Court's consideration information about how the Defendant processes warranty claims. It found a website that contains the Defendant's "Dealer Central Software". The Plaintiff explains at page 12 of his Motion that that website is where dealers report warranty claims, i.e. "complaints", which includes reporting the subject product's VIN. The Plaintiff found this website during online research that he conducted after the above depositions.

14. Not only did the Defendant have those additional databases of responsive information, but the Defendant also was under a special regulatory order that obligated it to follow best practices for collecting and reporting problems with its products including customer complaints. At DE 91—20 and DE 91—21 the Plaintiff proffers two filings from the administrative enforcement action, in re: AQ14—002 Forest River, Inc., that NHTSA brought against the Defendant. The first filing is the Defendant's answer (dated October 31, 2014) to the Defendant's request for information relevant to that proceeding, and the second is the Consent Order (dated July 8, 2015) to which the Defendant agreed. Both filings pre-date the Plaintiff's discovery requests in this lawsuit. Moreover both filings show that the Defendant has a legal obligation to compile and report such information as property damage claims, consumer complaints, warranty claims, and field reports. Pursuant to the Consent Order, the Defendant agreed to set up an internal system to ensure compliance with those recordkeeping and reporting obligations; to notify both dealers and customers of safety-related defects; and to pursue such "best practices" as maintaining an open channel for suppliers and customers to communicate concerns, to conduct outreach, and to permit audits. The Defendant agreed to make its compliance efforts public. The counsel who represented

the Defendant in that NHTSA enforcement action is the same counsel who represents the Defendant here in this lawsuit.

15. The Defendant responds that the proffered evidence does not show the existence of a central database of all consumer complaints or an internal complaint tracking system. While the proffered evidence does not show a database that is centralized to that degree, it still shows the existence of "databases" in the practical sense of meaning places where information is purposefully compiled and organized. While there may not be a centralized database where responsive information was specifically gathered and directly searchable, the Plaintiff still shows that those sources of information were searchable by using a certain process (transfer of the underlying data to a special application) and search criteria (VIN coding) had been used.

16. From the above proffered evidence, this Court discerns the following: First, the Defendant possessed three different "databases" or equivalent sources of information about consumer complaints. Second, it would have been possible by reasonable effort to search those sources for information responsive to Request No. 7. Third, no such search was undertaken. This Court discerns in the Defendant's Response (DE 93) no clear explanation for why its search for responsive information was limited to its email database. Nor does this Court discern in the Defendant's Response (DE 93) a clear explanation for why in its preceding Response (DE 75) it did not address this matter in greater depth.

## DISCUSSION

17. This brings the discussion around to the reconsideration standard. A motion for reconsideration should not be used to cite legal authorities that were available when the first ruling was made or to relitigate arguments already made. A motion for reconsideration instead is limited to correcting manifest errors of law or fact or to presenting newly discovered evidence. It is

appropriate only where the court patently misunderstood the party, decided a matter outside of the adversarial issues presented by the parties, or made an error of apprehension rather than of reasoning. The Plaintiff, as the party who is asking for reconsideration, bears the burden of meeting that high standard and of persuading this Court to reverse its prior decision. See Burke v. Miami Dade County, 2017 WL 11454397, *1-2 (S.D.Fla. 2017), Sherrod v. Sch. Bd. of Palm Beach County, 2012 WL 12895258 (S.D.Fla. 2012), and Burger King Corp. v. Ashland Equities, Inc., 181 F.Supp.2d 1366, 1369-70 (S.D.Fla. 2002). The Plaintiff meets that burden of persuasion here on both grounds of: (1) newly discovered evidence and (2) to correct error.

18. The Defendant counters that the depositions of Mr. Hill and Mr. Coy are not new because this Court knew about them when it denied the Plaintiff's Motion for Sanctions. However this Court only knew that the depositions had taken place. The transcripts of those depositions were not yet available, and this Court did not know the content of their testimonies. Now this Court does. Moreover the Plaintiff proffers even more recent evidence that he on his own found after the briefing of the Motion for Sanctions. Taken altogether, this Court finds that the Plaintiff does now bring forth substantive new evidence that this Court should include in its consideration. Moreover it is new evidence that is directly relevant to the sanctions ruling. The new evidence shows that the Defendant had sources of responsive information more than what this Court initially understood it to have and which the Defendant did not access despite ample time to do so.

19. This new evidence heightens the need for this Court to reconsider the reason for why the Defendant did not produce that additional responsive information. Based on this new round of briefing, this Court does not discern a reasonable explanation for why the Defendant on its own did not access those additional sources of potentially responsive information. Instead it

was the Plaintiff who undertook the effort of ferreting out that additional information, information that the Defendant should have produced on its own.

20. This brings the discussion around to the issue of correcting an error in the prior ruling on the Motion for Sanctions. The error that needs to be corrected is the scope of the remedy that this Court made to correct the shortcomings in its initial discovery production. In the prior ruling this Court found a supplemental production to provide sufficient redress. This Court now sees the need for the Plaintiff to be able to recover attorney fees for the extra effort he expended to ferret out the fact that there was additional responsive information that the Defendant had not produced (and which required the supplemental production) and for litigating the issue. Now knowing the full circumstances, it would be unfair to make the Plaintiff bear that expense when the Defendant could have (and should have) made that production far more easily and efficiently had it done so on its own initiative. This Court now finds the Plaintiff entitled to an award of attorney fees and costs pursuant to Rule 37(c)(1)(A), Fed.R.Civ.P., for the Defendant's failure to produce all available information that was in its possession and of which it should have been aware (that is, the information that this Court later ordered the Defendant to produce by way of the supplemental production) by the January 10, 2020 deadline. Rule 37(c)(1)(A), Fed.R.Civ.P., permits this Court to order the Defendant to reimburse the Plaintiff for his "reasonable expenses, including attorney's fees, caused by the failure" of the Defendant to provide required information.

21. Beyond that expense reimbursement, this Court still does not find that shortcoming in the Defendant's production to be sanctionable however. This Court finds the award of reasonable expenses (in conjunction with the already completed supplemental production) to suffice to redress the situation. This Court declines to impose more severe penalties for two reasons. First, while the Defendant could have (and should have) made use of the additional sources of information, this

Court finds those sources still were not so obvious that its failure to do so reflects willful inaction. Second there is an insufficient predicate of willful non-compliance established on this particular discovery issue to support the imposition of severe sanctions against the Defendant. See Great Fla. Ins. Holding Corp. v. Great Fla. Ins. of Venice, Inc., 2013 WL 12383418 (S.D.Fla. 2013) (noting due process concerns). Third, and most importantly, the underlying information that Request No. 7 sought has only a tangential benefit to this lawsuit. While sufficiently relevant to justify the discovery production, information concerning other consumers' complaints is not so dispositive to the Plaintiff's advertising-based fraud claim to justify severe sanction for the late production. To this extent this Court agrees with the Defendant's Response in opposition to the Motion for Reconsideration.

22. That leaves the matter of the amount of that reasonable attorney fee and expense award. This Court could let the parties litigate that issue, but the parties already have expended too much effort on issues related to Request No. 7. Indeed, it is because the Plaintiff expended extra effort in the pursuit of this discovery through successive motions and independent research, that this Court now finds it entitled to a fee and expense award. The parties' time is better spent moving on to briefing dispositive and trial-related motions. Therefore, rather than open a new round of briefing, this Court quantifies that amount of the reasonable attorney fee and expense award now in the exercise of its own discretion. See Marchisio v. Carrington Mortgage Servs., LLC, 2017 WL 5478285 (S.D.Fla. 2017) (noting that the court, itself, is an attorney fee expert and in the exercise of its discretion may rely on its own knowledge and experience in assessing the lodestar fee amount) (citing Hepsen v. Christensen & Assocs., Inc., 394 Fed.Appx. 597, 599-600 (11th Cir. 2010) and Butler v. Crosby, 2005 WL 3970740, *7-8 (M.D.Fla. 2005)). See also, Great Fla., supra (exercising that discretion to quantify the amount of the attorney fee award in the discovery

context). In the exercise of that discretion this Court finds $3,000 to be the reasonable expense (including the attorney fee) that the Plaintiff incurred in having to pursue the complete production of information responsive to Request No. 7 and in pursuing the instant Motion for Reconsideration. That expense award also serves Rule 26(g)'s goal of encouraging compliance with discovery obligations generally.

## **CONCLUSION**

23. The Plaintiff meets the high standard for seeking reconsideration of a prior ruling. The information that the Plaintiff proffers through his Motion for Reconsideration adds clarity to the issue about the shortcomings in the Defendant's production of information responsive to Request No. 7 and how the Defendant could have completed that production within the time frame as initially ordered. The Plaintiff shows that the Defendant did have additional sources of responsive information, and even if those sources were not readily apparent at the time or directly searchable, they were available nonetheless. Ultimately it was the Plaintiff through his own efforts that brought those additional sources to light. Given the overall circumstances, the Plaintiff should be reimbursed for that undertaking. Therefore this Court revisits its Order (DE 78) on the Plaintiff's Motion for Sanctions (DE 74) and finds that the Plaintiff is entitled to a fee and expense award, not just for litigating that prior Motion for Sanctions but also for the effort expended since then and on the briefing of the instant Motion, too.

It is therefore,

**ORDERED AND ADJUDGED** that the Plaintiff's Motion for Reconsideration (DE 91) is **GRANTED**. It is further,

**ORDERED AND ADJUDGED** that the Plaintiff is **AWARDED** a total of $3,000 in reasonable fee and expenses in reimbursement for his efforts in obtaining a complete production of information responsive to his Request No. 7 and in litigating this Motion for Reconsideration.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this  3rd  day of April, 2020.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE