UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 2:19-CV-14174-Rosenberg

RAYMOND KENDALL SMITH, M.D.,

        Plaintiff,

v.

FOREST RIVER, INC., and TROPICAL
RV AND AUTO EXCHANGE, INC.,
d/b/a TROPICAL RV SALES,"

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON FOREST RIVER, INC.'S MOTION FOR SUMMARY JUDGEMENT [ECF 79]

Before the Court is Defendant Forest River, Inc.'s Motion for Summary Judgment. ECF 79. This matter was referred to me by the presiding District Judge for a report and recommendation. ECF 101. For the reasons stated below, it is **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED** on Counts I, II, and VII.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises from Plaintiff Raymond Smith's purchase of a "fifth wheel" recreational vehicle. It was manufactured by Defendant Forest River Inc. ("Forest River") and sold by Defendant Tropical RV and Auto Exchange, Inc. ("Tropical"). Smith alleges that he was fraudulently induced into purchasing the RV, which had manufacturing defects, and that the Defendants failed to honor express and implied warranties.

Smith filed this action on May 16, 2019.  ECF 1.  A First Amended Complaint was filed on August 15, 2019.  ECF 40.  The First Amended Complaint alleged seven causes of action, as follows:

1. Breach of written warranty, in violation of Magnuson-Moss Warranty Act (Forest River, only)

2. Breach of implied warranty of merchantability, in violation of Magnuson-Moss Warranty Act (Forest River, only)

3. Breach of implied warranty of merchantability, in violation of Magnuson-Moss Warranty Act (Tropical, only)

4. Breach of implied warranty of fitness, in violation of Magnuson-Moss Warranty Act (Tropical, only)

5. FDUTPA (Tropical, only)

6. Negligence (Tropical, only)

7. Fraud (Forest River)

On December 11, 2019, Counts IV and V were dismissed with prejudice.  ECF 57.  On February 26, 2020, Forest River moved for summary judgment on all counts against it.  ECF 79 (Forest River Motion); ECF 80 (Forest River Statement of Facts).

## SUMMARY JUDGMENT LEGAL STANDARDS

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added). A dispute is

genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48)). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

## SUMMARY JUDGMENT PLEADING STANDARDS

Federal Rule of Civil Procedure 56 and Local Rule 56.1 mandate a procedure for pleading (and responding to) a Motion for Summary Judgment. The moving party must file a separate Statement of Material Facts, which has separately-numbered paragraphs, each asserting a single fact supported by "specific, pinpoint references" to particular parts of record. L.R. 56.1(b)(1)(B). The responding party must address the movant's Statement of Material Facts on a paragraph-by-paragraph basis in a Response to the Statement of Material Facts that either admits the asserted fact or cites (with specificity) record evidence that contradicts the fact. Fed. R. Civ. P. 56(c)(1); Local Rule 56.1(a), (b). The Court has discretion to disregard a factual assertion or dispute that is not properly supported. Fed. R. Civ. P. 56(e), L.R. 56.1(c), (d).

The movants' facts are admitted if the respondent does not properly contradict them. Local Rule 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and

(ii) any exception under Fed. R. Civ. P. 56 does not apply."). "If the nonmovant fails to respond [to a Statement of Material Facts] the movant's statement will be deemed admitted.  However, the summary judgment motion itself, even if unopposed, must be considered on its merits."  *Guasch v. Carnival Corp.,* 723 Fed. Appx. 954, 956 (11th Cir. 2018) (citations omitted); *see* Local Rule 56.1(d) ("If a party files and serves any Statement of Material Facts that does not comply with this rule, then the Court may strike the Statement, require immediate compliance, grant relief to any opposing party for any prejudice arising from a non-compliant statement or response, or enter other sanctions that the Court deems appropriate.").

## DISCUSSION

### A. *Smith's Failure to Respond*

I first address Smith's failure to properly respond to the summary judgment motions.  The same day the motions were filed, Smith moved for an extension of time until April 2 to respond to the motions for summary judgment.  ECF 85.  The next day, the Court granted the motion in part, extending the response deadline for the summary judgment motions to March 20.  ECF 90.

On March 17, Smith filed a timely unopposed motion for extension of time to respond to further extend the response to the Motions for Summary Judgment.  ECF 94.  As justification, Plaintiff's counsel explained:

- Both of Plaintiff's counsel had concluded a trial on March 2; Plaintiff's lead counsel began a second trial on March 3, which conclude on March 13;

- Plaintiff's other counsel was self-quarantined for health reasons from March 12-16;

- Plaintiff's counsel also had limited office staff assistance because of COVID-19 social distancing.

ECF 94.  Plaintiff requested a one-week extension.  This motion was granted, which extended the response deadline until March 27.  ECF 97.

On March 26, the trial judge referred the motions for summary judgment to the undersigned.  ECF 101.  On March 27, the day the responses were due, Plaintiff filed a third motion to extend the response deadline, this time until April 1. ECF 103.  I granted the motion.  ECF 104.  On the new response date, Plaintiff filed a fourth motion to extend the deadline.  ECF 107.  I granted the motion and extended the response date, as requested, until April 6.  ECF 108.  My Order noted that no further extensions would be granted.  *Id.*  On April 6, Plaintiff filed a fifth motion to extend the deadline.  ECF 110.  I denied the motion.  ECF 112.  Smith has not filed a document identified as a "Response" to the motions for summary judgment or to the Defendant's Statements of Material Facts.

On April 8, Plaintiff filed under seal a document described as his "declaration in support of his response to defendants' motion for summary judgment and attachments."  ECF 111, 115.[1] It is not clear what this document is supposed to be.  The Motion for Leave to File Under Seal describes it as a "declaration in support of his response to defendants' motion for summary judgment and attachments."    But, Smith has not filed a response to the Motions for Summary Judgment, so there is nothing for the declaration to support.

I will not consider the declaration.  It is not a proper response to the Defendants' Statements of Material Facts.  First, it is not denoted a response to the Defendants' Statements of Facts, or a Reply Statement of Material Facts.    *See* Local Rule 56.1(b)(3)(A).   Second, its numbered paragraphs do not "correspond with the order and paragraph numbering format used by" either movant, as required by Local Rule 56.1(b)(2)(A).  Third, each numbered paragraph does not begin

---

[1] Forest River responded to the pleading on April 15.  ECF 118.

with the word "disputed" or "undisputed," as required by L.R. 56.1(b)(2)(B).  Fourth, each fact asserted in the Declaration is not "supported by specific, pinpoint references to particular parts of record material," as required by Local Rule 56.1(b)(1)(B).

I deem the Defendants' Statements of Material Fact to be admitted.  The Court has discretion in addressing a party's failure to properly respond to a Statement of Material Facts:

> If a party files and serves any Statement of Material Facts that does not comply with this rule, then the Court may strike the Statement, require immediate compliance, grant relief to any opposing party for any prejudice arising from a non-compliant statement or response, or enter other sanctions that the Court deems appropriate.

L.R. 56.1(d).  One available sanction is to deem the other party's material facts to be admitted. L.R. 56.1(c); Fed. R. Civ. P. 56(e).  Here, after receiving four extensions of time, Smith filed an untimely Declaration that is neither a response to the Motions for Summary Judgment nor a Response to the Statements of Material Facts.  The interests of justice do not warrant giving Smith additional time to (finally) file a conforming pleading.

Therefore, I accept the following facts as undisputed:

**B.** **Undisputed Material Facts[2]**

1.      On January 22, 2018, Plaintiff purchased a 2018 Rockwood RV, Model 8297WS, VIN 4X4FRLF27J1882302 (the "RV") from Tropical RV and Auto Exchange, Inc. d/b/a Tropical RV Sales ("Tropical") for a purchase price of $46,933.61.

2.      No one from Forest River was involved in the sale of the RV to Plaintiff.

3.      Forest River did not make any representations to Plaintiff about the RV before or at the time he purchased the RV.

---

[2] The Statements of Fact are copied verbatim from Forest River's pleading at ECF 80.

4. In connection with his purchase of the RV, Plaintiff received Forest River's Limited Warranty ("Warranty").

5. The Warranty attached to Plaintiff's Complaint is the warranty he received from Forest River with his purchase of the RV.

6. Plaintiff is familiar with the Warranty, and he had the opportunity to review the Forest River warranty during his purchase of the RV.

7. Plaintiff knew the Warranty contained limitations and would not last forever. After repairs were made to the truck towing the RV, Plaintiff traveled to Houston, Texas with the RV in tow.

8. Forest River's Limited Warranty provides:

… No action to enforce express or implied warranties shall be commenced without prior written notice to the manufacturer and/or Warrantor at the address listed above of the alleged defect or nonconformity or the authorized repair facility's failed repair attempt and MANUFACTURER, AT ITS DIRECT OPTION, SHALL HAVE A FINAL OPPORTUNITY TO REMEDY.

DISCLAIMER OF CONSEQUENTIAL AND INCIDENTAL DAMAGES: THE ORIGINAL CONSUMER PURCHASER OF THIS RECREATIONAL VEHICLE AND ANY PERSON TO WHOM THIS UNIT IS TRANSFERRED, AND ANY PERSON WHO IS AN INTENDED OR UNINTENDED USER OR BENEFICIARY OF THIS UNIT, SHALL NOT BE ENTITLED TO RECOVER FROM WARRANTOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES.

9. After taking delivery of the RV, within a few miles of Tropical's dealership, Plaintiff was in his first roadway accident involving the RV.

10. After repairs were made to the truck towing the RV, Plaintiff traveled to Houston, Texas with the RV in tow.

11.     During his stay in Houston, Plaintiff alleges that defects with the RV began manifesting, including issues involving the heater, electrical circuits, moisture accumulation, plumbing leaks, broken cabinets and trim, corrosion, and roof leaks.

12.     Plaintiff's first contact with Forest River was in late April of 2018.

13.     Forest River referred Plaintiff to RV Masters in Houston, Texas for repair of the alleged defects to the RV.

14.     Thereafter, Plaintiff took the RV to RV Masters on April 28, 2018 to perform warranty work.

15.     Plaintiff picked up his RV from RV Masters on July 3, 2018.

16.     At the time Plaintiff picked up his RV from RV Masters on July 3, 2018, all of his original concerns with the RV had been repaired.

17.     At the time the RV left RV Masters on July 3, 2018, the RV was operating as designed.

18.     At the time the RV left RV Masters on July 3, 2018, the RV did not suffer from any diminished value.

19.     Following repairs being performed by RV Masters, Plaintiff picked up his RV on July 3, 2018 and began traveling to Canada with the RV hitched to the back of his pickup truck.

20.     Within ten (10) miles of leaving the repair facility in Houston, Plaintiff was involved in his second roadway accident involving the RV.

21.     Forest River did not refuse to repair the RV after repairs were completed by RV Masters on July 3, 2018.

22.     Plaintiff did not present his RV to Forest River or a dealership for repairs after it was seen for repairs in Houston/after the roadway accident.

23.     Plaintiff continued to Canada with the RV, where he arrived on July 5, 2018.

24.     Plaintiff has no training in auto repair.

25.     Plaintiff would rely on an expert to repair an automobile or RV.

26.     Plaintiff does not consider himself an expert in automobile or RV repair.

27.     Plaintiff has no background, training, or experience in repairing RVs.

28.     Plaintiff did not take his RV to a Forest River authorized dealer for warranty repairs after July 3, 4, or 5, of 2018.

29.     In fact, Plaintiff took the RV to an authorized Forest River dealer on only 1 occasion, which was to RV Masters in Houston, Texas.

30.     After his final conversation with Forest River on July 16, 2018, Plaintiff never presented the RV to any Forest River authorized dealer.

31.     Instead, following the second roadway accident involving the RV, Plaintiff made a claim with his insurance carrier, Progressive Insurance Company ("Progressive") related to the RV.

32.     Plaintiff reported to Progressive that he ran off the road and damaged the RV.

33.     Progressive determined the RV was a total loss by reviewing photographs and estimates provided to it by Plaintiff.

34.     Progressive determined the cause of the total loss was a single vehicle accident.

35.     Progressive did not make any determination as to whether Forest River did anything wrong as it related to the total loss of the RV.

36.     The damage that Progressive assessed its claims on was based on the accident.

37.     Plaintiff told Progressive the damage to the RV was from him running the RV off the road.

38.     Progressive never told Forest River that it was taking possession of the RV.

39.     Progressive never told Forest River that the RV was being sold at auction.

40.     Progressive never gave Forest River notice that it was going to dispose of the RV so that Forest River could inspect it.

41.     Plaintiff testified that he had no reason to take the RV back to Forest River for repairs once Progressive told him they were going to total the RV.

42.     Plaintiff never let Forest River know that he was going to relinquish title to the RV to his insurance company.

43.     Plaintiff did not give Forest River an opportunity to inspect the RV before he turned it over to Progressive.

44.     Forest River's expert, Paul Pierce, was unable to inspect the RV.

45.     Physical inspections of an RV are necessary to validate or disprove claims against defendants like Forest River.

46.     The RV is critical evidence in the instant case.

47.     Other materials, such as the purchase order for the RV, repair order, the Limited Warranty, unit file, etc., are less reliable than a physical inspection of an RV to determine if the RV was defective or whether those defects were covered under a warranty.

48.     Nonetheless, by review of documents associated with the RV, Forest River's expert found no damages or defects attributable to Forest River.

49.     To the contrary, Plaintiff filed a claim with his insurance carrier who declared the RV a total loss due to an accident.

50.     Progressive paid Plaintiff the entire purchase price of the RV when he made a claim to Progressive.

51.     Plaintiff was paid the full amount of his purchase price of $46,933.61 by Progressive for the RV.

52.     There were no out of pocket expenses for repairs to the RV that Plaintiff was not reimbursed for.

53.     Forest River never refused to reimburse Plaintiff for any repairs to the RV.

54.     Plaintiff agrees that at the time he accepted the RV, the value of the RV was what he paid for it.

## C.     Claims, Defenses, and Asserted Grounds for Summary Judgment

As noted above, the First Amended Complaint alleges three causes of action against Forest River:  breach of express warranty (Count I), breach of implied warranty of merchantability (Count II), and fraud (Count VII).  In its Answer, Forest River denies the allegations in Counts I, II, and VII.  It asserts 38 affirmative defenses.  Forest River asserts eight legal arguments why it should receive summary judgment:[3]

1.   Smith failed to preserve evidence because he allowed the RV to be destroyed;

2.   The doctrine of estoppel bars Smith from obtaining a double recovery;

3.   Smith failed to provide notice and an opportunity for Forest River to repair the product, as required by Florida law and the terms of the Warranty.

4.   There were no manufacturing defects covered by the Warranty;

5.   There are no legally-cognizable damages;

6.   Count II fails because there is no privity between Smith and Forest River.

7.   Count VII fails because the representations made by Forest River were puffery and thus

---

[3] Although Forest River does not expressly move for summary judgment on any of its affirmative defenses, several of its arguments in the Motion for Summary Judgment conform to affirmative defenses.

are not actionable representations.

8. Count VII is barred by the economic loss rule.

9. Even if Smith's claims otherwise survive, the Warranty precludes incidental and consequential damages.

### D.     *Count I (Breach of Express Warranty)*

Counts One arises under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* "The Magnuson–Moss Warranty Act gives consumers a private right of action against warrantors for a breach of warranty, as defined by state law. To state a claim under the Magnuson-Moss Warranty Act, though, a plaintiff must also state a valid breach of warranty claim." *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1110–11 (S.D. Fla. 2019) (J. Moreno) (citations omitted).

Count I alleges a breach of Forest River's written limited warranty. Specifically, it alleges that, despite being given proper notice, Forest River "fail[ed] to cure the RV's defects, non-conformities and conditions within a reasonable number of attempts or a reasonable amount of time." ECF 40, ¶ 55. "[T]he question whether a warrantor has committed a breach of a limited express warranty under the [Magnuson-Moss] Act is governed by state law." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 323 (Fla. Dist. Ct. App. 2008).

There is an initial question of which state law applies here. The warranty states, "The terms, conditions, rights and responsibilities of this warranty shall be governed by the laws of the State of Indiana notwithstanding any other state laws. ECF 80-1 at 30. But, Forest River's motion cites and discusses only Florida law. I need not resolve this question because, as relevant here, Florida and Indiana laws are the same.

"To succeed on a breach of express warranty claim under Florida law, Plaintiffs must show: '(1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given

within a reasonable time after the defect was discovered; and (3) Defendant was unable to repair the defect.'" *McLaughlin v. Monaco RV LLC*, 8:14-CV-703-T-36TGW, 2015 WL 5355465, at *3 (M.D. Fla. Sept. 14, 2015) (citations omitted). A plaintiff must also prove it suffered a legally-cognizable injury as a result of the breach. *See, e.g., Armadillo Distribution Enterprises, Inc. v. Hai Yun Musical Instruments Manufacture Co. Ltd.,* 142 F. Supp. 3d 1245, 1253 (M.D. Fla. 2015). "Under Florida law, a written warranty is treated like a contract between the seller and the buyer. As such, the terms of an express warranty may limit or foreclose the remedies available to the buyer." *Aprigliano v. Am. Honda Motor Co., Inc.,* 979 F. Supp. 2d 1331, 1339–40 (S.D. Fla. 2013) (J. Altonaga) (citations omitted).

Similarly, Indiana law allows "parties, as part of their arms-length bargain, to limit remedies available under a sales contract. . . . Because the UCC gives parties freedom to shape their own remedies to suit their particular contract, Indiana courts will enforce reasonable agreements limiting or modifying remedies in a sales contract. Still, Indiana requires at least minimally adequate remedies to the contracting parties." *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.,* 134 N.E.3d 370, 379 (Ind. 2019).

The First Amended Complaint alleges that Forest River breached the limited express warranty by not "repairing the defects, non-conformities and conditions of the RV within a reasonable number of attempts or a reasonable amount of time." ECF 40, ¶ 52. The relevant part of the warranty states in pertinent part:

> Warrantor will remedy substantial defects in materials and workmanship caused by Warrantor. Warrantor shall elect to remedy the defect from among the following: repair or replacement. Warranty performance can only be obtained at Warrantor's authorized dealers and service centers and from Warrantor at the discretion of the Warrantor. All costs incurred in transporting this recreational vehicle for warranty service shall be borne by Purchaser. Warrantor shall remedy the defect within a reasonable amount of time after appointment and delivery by Purchaser. All of Warrantor's expenses in remedying the defect shall be borne by the Warrantor.

ECF 80-1 at 30.

      *1.  Failure to Notify/Lack of Defect*

Forest River argues that it is entitled to summary judgment on Count I because Smith failed to provide notice, as required by the Warranty, and because any defect was timely cured, as permitted by the Warranty.  The undisputed material facts allege:

- Plaintiff's first contact with Forest River was in late April of 2018.

- Forest River referred Plaintiff to RV Masters in Houston, Texas for repair of the alleged defects to the RV.

- Thereafter, Plaintiff took the RV to RV Masters on April 28, 2018 to perform warranty work.

- Plaintiff picked up his RV from RV Masters on July 3, 2018.

- At the time Plaintiff picked up his RV from RV Masters on July 3, 2018, all of his original concerns with the RV had been repaired.

- At the time the RV left RV Masters on July 3, 2018, the RV was operating as designed.

- At the time the RV left RV Masters on July 3, 2018, the RV did not suffer from any diminished value.

ECF 80, ¶¶ 12-18.  The undisputed facts also establish that Smith never notified Forest River of any problems with the RV after it left RV Masters on or about July 4, 2018.

Smith's breach of express warranty claim fails.  The undisputed facts do not establish that any defect existed after Smith took possession of the RV from RV Masters.  Additionally, the undisputed facts negate any claim that Forest River failed to timely cure any defects. Summary judgment should be granted on Count I.

2.  *Lack of Damages*

In the alternative, Forest River alleges that it is entitled to summary judgment because the undisputed material facts show no damages.  "A buyer's remedy for breach of warranty is typically the difference between the goods as warranted and the goods as accepted."  *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 955 (Ind. 2001); *Kia Motors Am., Inc. v. Doughty,* 242 So. 3d 1172, 1175 (Fla. Dist. Ct. App. 2018) ("Under Florida law, a claimant in an action for breach of warranty may recover damages for the diminished value of the warranted goods as well as incidental and consequential damages resulting from the breach) (citations omitted).[4]  However, the cost of repair may serve as a proxy for direct damages.  *Rheem,* 746 N.E. at 955; *Koplowitz v. Girard,* 658 So. 2d 1183, 1184 (Fla. Dist. Ct. App. 1995) ("Generally, a correct measure of damages for breach of contract as a result of defective performance is the reasonable cost of remedying the breach by making the work performed or article furnished conform to the contract.").

The undisputed material facts establish that any defect in the RV had been repaired on or about July 3, 2018, and, at that point, the RV "did not suffer from any diminished value."  The facts also show that Smith did not incur any unreimbursed repair costs.  ECF 80, ¶ 52.  Forest River is entitled to summary judgment on Count I on this independent ground.

---

[4] Florida and Indiana law is identical:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

*Compare* Ind. Code Ann. § 26-1-2-714 *with* Fla. Stat. § 672.714.

### 3. Spoliation of Evidence

Forest River seeks summary judgment as a sanction for alleged spoliation of evidence based on Smith's surrendering of the RV to his insurer, who then destroyed it. As the party seeking spoliation sanctions, Forest River bears the burden of proof. *Wandner v. Am. Airlines,* 79 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) (J. Goodman). Therefore, Forest River must establish by a preponderance of the evidence that Smith had a duty to preserve the RV and acted in bad faith by not preserving it:

> District courts have broad discretion to impose sanctions deriving from their inherent power to manage court matters expeditiously and orderly. A court may impose the following sanctions for spoliation of evidence: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises the presumption against the spoliator." "Spoliation" means the "destruction of evidence or the significant and meaningful alteration of a document or instrument."
>
> . . .
>
> The party moving for sanctions based on spoliation must prove that (1) the missing evidence existed; (2) the alleged spoliator had a duty to preserve the missing evidence; and (3) the missing evidence is crucial to the moving party's prima facie case or defense. Importantly, however, a finding of "bad faith" is a prerequisite to a court's imposition of sanctions for spoliation of evidence. "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying" evidence is insufficient to show bad faith. If direct evidence of bad faith is lacking, the moving party may establish bad faith through circumstantial evidence. Still, a circumstantial showing of bad faith should at least include facts that show the alleged spoliator "engaged in an affirmative act causing the evidence to be lost."

*Snell v. Ford Motor Co.,* 12-23036-CIV, 2014 WL 11822753, at *2 (S.D. Fla. July 31, 2014) (J. Hunt) (citations omitted). *Austrum v. Fed. Cleaning Contractors, Inc.,* 149 F. Supp. 3d 1343, 1351 (S.D. Fla. 2016) (J. Marra) (In the spoliation context, bad faith "does not require malice and is defined by weighing 'the degree of the spoliator's culpability against the prejudice to the opposing party.' Furthermore, the spoliator's degree of culpability must be more than mere negligence.")

(citations omitted).  "[T]he duty to preserve evidence arises when a party *reasonably anticipates litigation*."  *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 09-61166-CIV, 2011 WL 1456029, at *11 (S.D. Fla. Apr. 5, 2011) (J. Goodman) (emphasis in original); *see also, e.g., Floeter v. City of Orlando*, 605CV-400-ORL-22KRS, 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007) (duty to preserve evidence "may arise if a party is on notice that documents or tangible items may be relevant or discoverable in pending or imminent litigation.").  In deciding whether to impose sanctions for spoliation, a Court must consider "(1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded."  *Austrum,* 149 F. Supp. 3d at 1349 (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005)).

Forest River has not met its burden of showing that Smith had a duty to preserve the RV. It is undisputed that Smith turned the RV over to Progressive Insurance some time in or after July 2018, and that Progressive sold it at auction thereafter.  ECF 80-5 at 52-53.  This lawsuit was filed May 16, 2019.  Forest River has not shown by a preponderance of the evidence that Smith reasonably anticipated litigation in the summer of 2018.  Therefore, it is not entitled to summary judgment as a sanction for spoliation.[5]

### 4.  *Double Recovery*

Forest River argues that allowing Smith to recover damages for breach of warranty would constitute a "double recovery" in light of Progressive having reimbursed the full amount of the purchase price.  Forest River cites to cases where a contracting party sought to obtain multiple,

---

[5] In light of this conclusion, I need not address whether the RV is crucial evidence for Forest River's defense of this case or whether Smith acted in bad faith by not retaining the RV.

cumulative, inconsistent remedies from another party to the contract.  ECF 79 at 6-7.  That is not the situation here.  Progressive is not a party to the sales contract from which Smith's breach of warranty claims arise.  Smith is only seeking one remedy *under that contract* – monetary damages. The "double recovery" doctrine does not apply.

**E.      Count II**

Summary judgment should be entered for Forest River on Count II, which alleges a breach of an implied warranty of merchantability.  Count II also arises under the Magnuson-Moss Warranty Act.  It alleges, "Defendant Forest River impliedly warranted and guaranteed that the RV conformed to ordinary standards of care, was of the same average grade, quality, and value as similar goods sold under similar circumstances, and was fit for the ordinary purpose for which it was to be used."  ECF 40, ¶ 60.

*1.  Lack of Damages/Lack of Defect*

Forest River is entitled to summary judgment on Count II for the same reasons it is entitled to summary judgment on Count I – the undisputed material facts do not establish that Smith suffered any legally-cognizable damages, nor do they demonstrate that the RV was not fit for the ordinary purpose for which it was to be used, nor that any defect was not timely cured, as permitted by the Warranty.

*2.  Disclaimer of Implied Warranty of Merchantability*

Forest River asserts that it is entitled to summary judgment on Count II because "Plaintiff has failed to meet the notice requirements under Florida law and under the terms of the Forest River warranty because he did not allow Forest River a final opportunity to remedy the alleged defects."  ECF 79 at 9.  Forest River is not entitled to summary judgment on this basis because the Warranty does not specifically exclude the implied warranty of merchantability in conspicuous

text.

Contracting parties can agree to exclude or modify any implied warrant of merchantability, so long as that modification or exclusion is conspicuous and mentions merchantability.  Ind. Code Ann. § 26-1-2-316; Fla. Stat. § 672.316.[6]  Warranty language is "conspicuous" if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."  Fla. Stat. § 671.201(10); *accord* Ind. Code § 26-1-1-201 (same language).  "Whether a term is 'conspicuous' is for decision by the court."  *Id.*  "Conspicuous terms include the following: (a) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (b) Language in the body of a record or display in larger type than the surrounding text or set off from surrounding text of the same size by symbols or other marks that call attention to the language."  Fla. Stat. § 671.201(10); *see* Ind. Code § 26-1-1-201 ("Language in the body of a form is conspicuous if it is in larger or other contrasting type or color."); *see also Perry v. Gulf Stream Coach, Inc.,* 814 N.E.2d 634, 646 (Ind. Ct. App. 2004) (disclaimer was conspicuous because it was contained in a paragraph entitled 'Warranties,' written in all capital letters, and underlined.); *Indiana Farm Bureau v. CNH Indus. Am., LLC,* 130 N.E.3d 604, 613 (Ind. Ct. App. 2019) (Warranty language was conspicuous because pertinent words were in all caps, larger than the surrounding text, and appeared under headings which were in all caps and bold typeface.)

---

[6] The Indiana and Florida UCC statutes are identical:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

"A disclaimer printed in the same size and style as the rest of the document and not otherwise differentiated is not conspicuous." *Herron v. Penske Truck Leasing Co., LP,* 8:09-CV-1488-T-27TBM, 2009 WL 10670447, at *3 (M.D. Fla. Nov. 6, 2009) (citations omitted) (collecting cases); *Bluewater Trading LLC v. Fountaine Pajot, S.A.*, No. 07–61284–CIV, 2008 WL 895705, *3 (S.D. Fla. Apr. 2, 2008) (J. Cohn) (disclaimer inconspicuous because smaller font than surrounding text).

The Warranty states in pertinent part:

No action to enforce express or implied warranties shall be commenced without prior written notice to the manufacturer and/or Warrantor at the address listed above of the alleged defect or nonconformity or the authorized repair facility's failed repair attempt and MANUFACTURER, AT ITS DIRECT OPTION, SHALL HAVE A FINAL OPPORTUNITY TO REMEDY.

SOF ¶ 8; ECF 40 at 29.  The language excluding actions to enforce an implied warranty does not use the word "merchantability;" it also is not conspicuous.  Therefore, this exclusion is invalid. *Bluewater Trading LLC* at *4 (inconspicuous disclaimer held "invalid").

### 3. *Privity of Contract*

Forest River next argues that summary judgment should be granted on Count II because there is no privity between Smith and Forest River.  ECF 79 at 13-15.  Forest River is correct that Florida law requires privity of contract as a prerequisite to a claim for breach of the implied warranty of merchantability. *See, e.g. David v. Am. Suzuki Motor Corp.,* 629 F. Supp. 2d 1309, 1323 (S.D. Fla. 2009) (J. Gold).  But, Indiana law does not require privity as a condition of such a claim. *Hyundai Motor Am., Inc. v. Goodin,* 822 N.E.2d 947, 959 (Ind. 2005) ("Indiana law does not require vertical privity between a consumer and a manufacturer as a condition to a claim by the consumer against the manufacturer for breach of the manufacturer's implied warranty of merchantability.").  The parties contracted to have Indiana law govern the "terms, conditions, rights

and responsibilities of this warranty . . . notwithstanding any other state laws."[7]  Therefore, lack

of privity does not entitle Forest River to summary judgment on Count II.

**F.      *Count VII***

Summary judgment should be entered for Forest River on Count VII, which alleges fraud

in the inducement.    The economic loss rule bars this claim.    In the alternative, any

misrepresentations were puffery.

*1.  Economic Loss Rule*

Count VII is barred by the economic loss rule.  "[T]he economic loss rule is a judicially

created doctrine that sets forth the circumstances under which a tort action is prohibited if the only

damages suffered are economic losses." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan

Companies, Inc.,* 110 So. 3d 399, 401 (Fla. 2013).  Economic loss is "damages for inadequate

value, costs of repair and replacement of the defective product, or consequent loss of profits—

without any claim of personal injury or damage to other property."  *Casa Clara Condominium

Ass'n, Inc. v. Charley Toppino and Sons, Inc.,* 620 So. 2d 1244, 1246 (Fla. 1993) (cited in *Tiara

Condo*, 110 So. 3d at 401). The economic loss rule only applies to cases involving products

liability.  *Tiara Condo,* 110 So. 3d at 407.

---

[7] Arguably, the reference to "this warranty" in the choice of law provision of the Warranty could
be construed to apply only to the express warranty, not to any implied warranties.  The Warranty
purports to disclaim any implied warranties.  It is therefore reasonable to construe the choice of
law provision to apply to these implied warranties, too.  *See Woodruff v. Clark Cty. Farm Bureau
Co-op. Ass'n*, 153 Ind. App. 31, 43, 286 N.E.2d 188, 194–95 (1972) ("implied warranties . . . are
imposed by operation of law for the protection of the buyer, and they must be liberally construed
in favor of the buyer.") (collecting cases).

The economic loss rule bars a fraud in the inducement claim in a products liability case if the fraud claim "depends upon precisely the same allegations as a warranty claim – i.e., a claim the product failed to perform as promised." *In re Takata Airbag Products Liab. Litig.,* 193 F. Supp. 3d 1324, 1338–39 (S.D. Fla. 2016) (J. Moreno); *see also, e.g., Thompson v. Procter & Gamble Co.,* 18-CV-60107, 2018 WL 5113052, at *3 (S.D. Fla. Oct. 19, 2018) (J. Gayles); *Aprigliano v. Am. Honda Motor Co., Inc.,* 979 F. Supp. 2d 1331, 1337-39 (S.D. Fla. 2013) (J. Altonaga); *accord Gunkel v. Renovations, Inc.,* 822 N.E.2d 150, 153 (Ind. 2005) ("[D]amage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.").

The factual basis for Smith's fraud claim is identical to the factual basis for his breach of warranty claims – the RV failed to perform as advertised.  Count VII alleges that Tropical's web page "displayed defendant Forest River's logo and made [false] factual representations about material facts—the conscientiousness of its manufacturing process and the quality of its products, including its fifth wheel RVs."  ECF 40, ¶ 85. The implied warranty claim (Count II) alleges that Forest River "impliedly warranted and guaranteed that the RV conformed to ordinary standards of care, was of the same average grade, quality, and value as similar goods sold under similar circumstances, and was fit for the ordinary purpose for which it was to be used."  *Id.,* ¶ 60. Summary judgment should be granted on Count VII based on the economic loss rule.

2. *Puffery*

In the alternative, Forest River asserts that summary judgment should be entered on Count VII because any representations about the product were mere puffery, which cannot be the basis for a fraud claim.

> A claim of fraudulent misrepresentation is not actionable if premised on a mere opinion, rather than a material fact.  It is the responsibility of the buyer of a product or service to investigate the truth of any "puffing" statements, as such declarations do not constitute fraudulent misrepresentations.  A promise to deliver an "exceptional" product or service is a matter of opinion rather than fact, and constitutes non-actionable puffery.

*MDVIP, Inc. v. Beber,* 222 So. 3d 555, 561 (Fla. Dist. Ct. App. 2017) (citations and quotations omitted).  Although Paragraph 85 of the First Amended Complaint alleges that Tropical RV's website "made factual representations about material facts—the conscientiousness of its manufacturing process and the quality of its products, including its fifth wheel RVs," Forest River's Answer denied that allegation.  ECF 44 at 6.  The undisputed material facts do not contain any information about the content of Tropical RV's website.  Absent this evidence, even viewing the evidence in the light most favorable to Smith, no reasonable jury could find for him on the fraud claim.  Summary judgment should be entered on Count VII for this independent reason.

## G.   *Incidental and Consequential Damages*

The Magnuson-Moss Act, Florida law, and Indiana Law allow an express warranty to exclude consequential or incidental damages, so long as the exclusion "conspicuously appears on the face of the warranty" and is not unconscionable. Fla. Stat. § 672.719(3) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."); 15 U.S.C. § 2304(a)(3) ("such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty"); Ind. Code Ann. § 26-1-2-719(3) (West) (Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.).

The Forest River warranty states in pertinent part:

> DISCLAIMER OF CONSEQUENTIAL AND INCIDENTAL DAMAGES: THE
> ORIGINAL CONSUMER PURCHASER OF THIS RECREATIONAL VEHICLE
> AND ANY PERSON TO WHOM THIS UNIT IS TRANSFERRED, AND ANY
> PERSON WHO IS AN INTENDED OR UNINTENDED USER OR
> BENEFICIARY OF THIS UNIT, SHALL NOT BE ENTITLED TO RECOVER
> FROM WARRANTOR ANY CONSEQUENTIAL OR INCIDENTAL
> DAMAGES.

ECF 80-1 at 30. This language is conspicuous. The undisputed facts do not show that it is unconscionable. Therefore, it is enforceable and Smith is not entitled to recover incidental or consequential damages.

## RECOMMENDATION

It is **RECOMMENDED** that Forest River's Motion for Summary Judgment (ECF 79) be **GRANTED** and that Final Judgment be entered in favor of Forest River on Counts I, II, and VII.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file an objection to this Report and Recommendation, they shall file a notice to that effect within five (5) days.**

24

**DONE AND SUBMITTED** in Chambers this 16th day of April, 2020 at West Palm Beach

in the Southern District of Florida.

BRUCE REINHART
United States Magistrate Judge